## Edward J. Wackerle v. The People of the State of Illinois, use, etc.

1. GUARDIANS—*Resignations of*.—Under our statute the resignation of a guardian is not a matter of right, but of permission, by the court appointing him, upon condition that he first settle his accounts and deliver over the estate as directed by the court.

2. COUNTY COURTS—*Jurisdiction to Appoint Guardians*.—Jurisdiction to appoint guardians is given to the County Courts in their respective counties as to minors inhabitants of or resident in such counties, and where a guardian is appointed by a County Court having jurisdiction, he can not, of his own motion, when required by such court to give additional security, resign his trust and go into another county and be appointed guardian of the same minor a second time.

3. JURISDICTION—*Of County Courts—Guardians*.—Where a person is appointed guardian by two different County Courts, the one which, by reason of the domicile of the minors, has exclusive jurisdiction in the first instance and actually obtains it, will retain it, and such guardian will be subject to it, exclusively, until lawfully discharged therefrom.

Order Removing a Guardian.—Appeal from the Circuit Court of Scott County; the Hon. CYRUS EPLER, Judge, presiding. Heard in this court at the November term, 1895. Affirmed. Opinion filed June 24, 1896.

H. G. WHITLOCK, attorney for appellant.

J. M. RIGGS, attorney for appellee.

Where one court has acquired jurisdiction, no other court, State or Federal, will, in the absence of supervising or appellate jurisdiction, interfere, unless in pursuance of some statute, State or Federal, providing for such interference. Mail v. Maxwell, 107 Ill. 561.

Where two courts have concurrent jurisdiction the one which first acquires actual jurisdiction will retain it. Mason v. Piggott, 11 Ill. 85; Ross v. Buchanan, 13 Ill. 55; Mapes v. People, 60 Ill. 523; Whitney v. Stevens, 97 Ill. 482; Howell v. Moores, 127 Ill. 67.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

On appeal from an order of the County Court removing a guardian and appointing his successor, the Circuit Court affirmed it, and from such order of affirmance this appeal is taken.

The material facts, shown by record evidence and undisputed, are as follows: In January, 1894, Charles J. Wackerle died at Glasgow, in Scott county, the place of his residence, leaving four children, all under the age of fourteen years, and his widow, who was his second wife and their step-mother. His property, wholly personal, and some real estate belonging to the children, was all in that county. On the 27th of that month appellant, his brother and a resident of Morgan county, filed his petition to the County Court of Scott County, for his appointment as guardian of these minors, setting forth among other things that their estate consisted of life insurance, about $2,400, and their distributive share of their father's estate, about $900, and estimating the whole at about $3,400, and on the 5th of February letters were issued to him upon his giving the bond required of $6,800. It afterward appeared, however, that as guardian he collected and received for them on March 5, 1894, of the Woodman Insurance Co. $2,400, on May 16th of the Home

Forum Insurance Co. $1,754, and at a date not given for house rent $52.40, in all $4,206.40, which, added to his estimate of their distributive share, the actual amount of which was not shown, would make $5,106.40. On November 12, 1894, upon the petition of their step-mother, a citation was issued to him, returnable to the December term following, to show cause why he should not give a better bond, which was personally served on the 24th. At his request, and according to the statement of the county judge, upon his promise in the meantime to give a better bond with a certain party named as security, the matter was continued to the January term, 1895. Failing to appear at that term, the court, after a hearing on the petition, on January 7th made an order finding the facts to be as alleged, and requiring him to give a bond in $10,000 by the 14th of that month, a copy of which was served upon him on the 11th. From that order no appeal was taken; nor did he comply with it or show any excuse for his failure or make any appearance at the court in person or by attorney. Therefore, on the 15th, the day after its expiration, the court made the order removing him and appointing Byron McEvers his successor upon giving bond in $10,000, and requiring appellant, upon being served with a certified copy thereof and of McEvers' letters, to turn over to him all property of said wards, from which order, on January 31st, he took this appeal to the Circuit Court.

On the hearing below, the usual order of proceeding was reversed, and appellant, who was the respondent, opened the case. This was claimed and allowed without objection, in view of the statutory provision that "no appeal from an order removing a guardian shall in any wise affect such order until the same be reversed."

The facts above stated all appear from the evidence on the part of appellee, which was afterward put in, and so may perhaps account for the admission by the court, over objection, of the records of the County Court of Morgan County, offered by appellant.

These records show that appellant, on the 4th day of Jan-

uary, 1895, which was after the citation from the County Court of Scott County had been personally served upon him and after the matter had, on his motion, been continued from its December term, 1894, to its January term, 1895, on his own application obtained from the County Court of Morgan County an order that letters of guardianship of said heirs, from said court, be issued to him, and that such letters in the usual form were so issued, upon his giving bond in $7,400.

He then testified that he tendered his resignation as guardian to the county judge of Scott county before the 5th day of January, 1895; that it was in writing, and about the first day of that month; and that on the fifth, he notified the judge by telephone that he had been appointed guardian in Morgan county. He further testified that when he was appointed in Scott county two of the children were boarding with their step-mother in Scott and two were with him in Morgan county; but in his petition for that appointment, verified by his oath, he stated that they were all residents of Scott county.

The county judge of Scott county testified that he had no recollection of receiving from appellant a written tender of his resignation nor upon search could find it among the papers in the case, but that the first intimation he had of any change or attempted change in the situation was through the telephone statement of appellant that he had been appointed guardian in Morgan county, which he thought was before the January term, 1895.

We discover in the record nothing more than is above stated that is pertinent to the questions presented for decision.

In the brief and argument for appellant counsel say that " in this case there are but two propositions to discuss; first, the removal of Wackerle after he had tendered his resignation; and second, the appointment of McEvers as guardian of said heirs after Wackerle had been duly appointed guardian in Morgan county, and had notified the county judge of Scott county of such appointment." With the substitution

in the second, of " formally " for " duly," which begs the question, this statement may be accepted.

It impliedly concedes that from the date of his appointment by the County Court of Scott County until the alleged tender of his resignation, about the first of January, 1895, the jurisdiction of that court in respect to him as guardian, and the estate of his wards, was as actual, exclusive and ample as the statute in any such case confers. It had been obtained on his own application. In the course of its regular exercise there came to be and was pending before that court, at the time of the alleged resignation, a proceeding to get from him a further or better bond, of which he had been properly notified and in which he had appeared and procured a continuance to the term then just about to commence. Instead of attending and answering to the citation, or getting any leave of the court, he sent a tender of his resignation, and a few days afterward a notice by statement through the telephone to the judge that he had obtained letters of guardianship of the same wards from the County Court of another county. And this very remarkable proceeding, it is claimed, ousted the Scott County Court of all its jurisdiction in the premises, and made void its subsequent order removing him and appointing his successor.

The proposition assumes that resignation is a matter of right which the guardian may exercise whenever he sees fit. It does not appear that he had ever filed an inventory of his wards' estate or made any report or rendered any account of his own doings as guardian; or that any change had taken place since his appointment in respect to his residence, or their domicile, or the situs of their property. If in such case he may resign at his own pleasure, he may in any. In Young v. Lorain, 11 Ill. 624, it was conceded by the court that until the passage of the act of April 13, 1849, a guardian could not, as a matter of right, resign his trust, nor, most probably, would the mere acceptance of the resignation of itself vacate the office, but it was held that in that case the Court of Probate having proceeded immediately upon the receipt of the tender, to revoke the letters,

considering it a sufficient cause for removal, and having power to remove for causes sufficient in its judgment, which could not be reviewed in a collateral proceeding, did thereby lawfully vacate the office and make a proper case for the appointment of another in his place. It seems clear that under the statute, resignation by a guardian is not a matter of right but of permission, and that to be given only on conditions specified. The provision is that "when it appears proper, the court may permit the guardian to resign his trust, if he first settles his accounts, and delivers over the estate as by the court directed." R. S., Ch. 64, Sec. 39. In this case he had done neither, nor did he get or ask permission. His tender and notice were therefore of no effect upon the jurisdiction. It can hardly be supposed that he himself thought otherwise, for on January 11, 1895, at least six days after such tender and telephone notice, and the issuance of the letters from the Morgan County Court, he tendered an account to the Scott County Court, sworn to by him on that date, and appearing among the papers in the case, though not approved by the court or marked filed by the clerk.

The order of January 7th, requiring a bond in $10,000 by the 14th, was made upon a hearing and proof, and was justified. The seventh section of the statute requires a bond "in a reasonable amount, which shall in no case be less than double the amount of the minor's personal estate and six times the amount of the gross annual income of the minor's real estate;" and the bond required and given in Morgan county was larger by $600 than the one he had given in Scott. But by his own showing in the report referred to, it was not large enough to comply with the statute, without considering his estimate in his petition for his appointment, of the amount of the minors' distributive share of their father's estate. From this order for a larger bond no appeal was taken.

It is not denied that failure to comply with it, without excuse shown, would justify the order for his removal, if the court making it had not lost the jurisdiction it was con-

ceded to have previously and rightfully had. But the claim is that it was taken away and lost by the alleged appointment of appellant by the County Court of Morgan County.

We do not think that in this contention there is matter enough for argument. This jurisdiction is given to "the county courts in their respective counties," as to "minors, inhabitants of, or residents in the same county." (Sec. 2.) No minor can be an inhabitant of or resident in two counties, and therefore two county courts in their respective counties can not have jurisdiction, at the same time, in the case of any minor resident in this State. This jurisdiction. is purely statutory, and there is no concurrent jurisdiction in several of such courts, because it is not given by the statute; and if there was, the one first actually obtaining it would have precedence. This is elementary law. Howell v. Moores, 127 Ill. 77, and cases cited on page 78. Even a court of chancery, with its plenary powers to guard the interests of minors, will not interfere with its exercise but for special and exceptional reasons. As between these county courts, that of Scott county had, by reason of the domicile and residence of the minors, exclusive jurisdiction in the first instance, and actually first obtained it, and would therefore retain it until such change in the situation was shown as would lawfully transfer it, and the guardian would be subject to it exclusively until lawfully discharged or released therefrom. When the order here appealed from was made, the situation, so far as appears, was unchanged; the guardian it appointed had not been released or discharged, nor his trust executed. The County Court of Morgan County therefore could not lawfully interfere. This also is elementary law, for which we need to cite no authority. A sufficiently clear and complete statement of it, however, is reproduced by counsel for appellee, from the opinion of the Supreme Court in Mail v. Maxwell, 107 Ill. 554 (on p. 561).

But appellant interposes the well established rule that county courts, having jurisdiction over estates in general, whether a particular county court has jurisdiction of a particular estate, is a question of fact to be determined by

that court, and when once determined the judgment is conclusive and can not be questioned in a collateral proceeding. Citing Bostwick v. Skinner, 80 Ill. 147, and The People v. Cole, 84 Id. 327.

We think that application of this undoubted rule is here sought to be made upon a misconception of the situation, and that rightly applied it operates against the appellant. The County Court of Scott County, to which the question was first submitted, determined that it had jurisdiction of this particular estate, and in the regular exercise of it, made the order here in question; from which appellant took directly this appeal, and here seeks to question the correctness of that determination, which he sought and obtained and still admits was correct, by evidence of what was determined by another court in a proceeding wholly distinct, and therefore collateral. According to the rule invoked, this evidence was inadmissible, but admitted, presumably, because appellant was given the opening, and therefore the court could not then know of the adjudication sought to be thus collaterally questioned. When it came to be advised of this adjudication, it properly disregarded this evidence, and sustained the adjudication.

The judgment will therefore be affirmed.